[L. A. No. 1877.   In Bank.—February 10, 1908.]

## ADELAIDE M. BANNING et al., Respondents, v. W. H. KREITER et. al., Appellants.

ACTION TO RECOVER STRIP OF LAND USED AS ALLEY-WAY—LICENSE—FINDINGS — PLEA OF EASEMENT AND ESTOPPEL — FAILURE TO FIND — REVERSIBLE ERROR.— In an action to recover a strip of land which plaintiffs claimed has been used as an alley-way by mere revocable license, but in which the defendants claimed an easement, and supported the claim by a plea of estoppel resting upon the authorized representations of plaintiffs' agents in selling the property abutting thereon to the defendants, where the court found for the plaintiffs, its failure to find upon the defendants' plea of estoppel where there is substantial evidence to support it, is reversible error, justifying a new trial.

ID.—RESERVATION OF ALLEY-WAY FOR BENEFIT OF DAUGHTERS—AUTHORIZED REPRESENTATION TO ABUTTING PURCHASERS—SUPPORT OF ESTOPPEL.—Where a plaintiff as owner had reserved an alley-way for her daughters, and had authorized her husband to employ real estate agents to sell lots for her, who, with the husband's consent, sold lots abutting thereon, stating the reservation so made, and that the purchasers would have the benefit of that alley-way, and in consideration thereof paid an increased price therefor, the facts show an intended abandonment of the seller's existing right in the alley-way, which will support an estoppel in favor of the purchasers of the abutting property relying thereon.

CLIII Cal.—3

ID.—EXCEPTION TO GENERAL RULE AS TO REPRESENTATIONS RAISING
AN ESTOPPEL.—When the statement relates to an intended aban-
donment of an existing right, and is made to influence others, and
they have been influenced by it, the case is a recognized exception
to the general rule that a representation to constitute an estoppel
must relate to an existing fact and not to a matter of opinion, or
promise of future performance; and so, when purchases are made
upon representations by the seller that abutting property owned
by him will be 'maintained as a public or private way for the
benefit of the purchasers, there is an expression of an intended
abandonment of a seller's existing right which will support an
estoppel, if the purchasers have relied upon it.

APPEAL from an order of the Superior Court of Los
Angeles County denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Works, Lee & Works, for Appellants.

McNutt & Hannon, and George H. Smith, for Respondents.

HENSHAW, J.—This is an action to recover possession
of a tract of land in the city of Los Angeles. The controversy
arises over a strip twelve and a half feet in width, extending
north from Requena Street a distance of ninety-four feet.
This strip had been used under a claim of right by defendants
as an alley-way to their property, which abutted upon it.
Defendants contended for an easement over the strip and
for a right so to use it as an alley-way. This right defendant
Hanniman supports by a plea in estoppel, and this estoppel
in turn arises from the declarations of the authorized agents
of plaintiffs in selling the property. The court found for
plaintiffs, but failed to find upon defendants' plea in estoppel,
and this error is here urged upon appeal from the order
denying the motion for a new trial. The omission of the
court is prejudicial error, if there be any substantial evidence
to support the plea, and for a determination of this a consid-
eration of the facts becomes necessary.

In 1881, Mrs. Banning, through her husband, William
Banning, employed a firm of real estate agents to sell certain
city lots for her. Mrs. Banning took no personal part in
the matter, gave no instructions to the real estate agents, but
intrusted the whole matter to her husband. She testifies that

whatever he did, he did with authority. Mr. Banning is dead. Mrs. Banning testifies that, because of the fact that her daughters owned a lot lying to the rear of this twelve-and-a-half-foot strip, it was decided between herself and her husband to reserve this twelve-and-a-half-foot strip as a means of ingress and egress to the daughters' land, but that the reservation was made wholly for her own purposes. One of the purchasers, Hanniman, testifies that he went to the real estate firm of Rowan & Dobinson, who were the agents for the sale of these lots, to purchase lots 76 and 77, each with a 25-foot frontage; that he was told by the real estate agents that the estate (Mrs. Banning) had reserved one half of lot 77 as an alley-way, and that by purchasing lot 76 and half of lot 77 he would have a frontage on this alley-way, better light for his building, etc., and that he would have the right to go in and out the alley. He then purchased the lot and the half lot, paying one hundred and fifty dollars extra, over and above the regular asking price, on account of the alley-way. Mrs. Banning has no recollection of receiving this extra price, and Mr. Dobinson of the real estate firm has no recollection of having exacted it, but nothing disputes the positive statement of Mr. Hanniman that it was exacted, and that he did so pay it.

The turning point of the matter, however, is to be found in the testimony of the selling agent and the interpretation which is to be given to that testimony. So far as it is pertinent to this matter, it is here quoted. He says that he drew the pencil line on the map marking off and reserving the disputed twelve and a half feet. The statement made to Mr. Hanniman, with the map before them and the pencil mark showing the reservation, was "to the effect that the estate had decided to reserve the west half of that lot, in order to give an entrance in the rear of the property owned by the minors, and that therefore he would have the benefit of that alley. . . . We had no conversation with Mrs. Banning at any time. All our business was done with Mr. Banning, whom we regarded as her agent. . . . Of course, we, as agents, should not have dreamed of reserving any portion of the lots offered for sale without the consent of the owner, or whom we regarded as the owner. And the reservation was made, with Mr. Banning's consent, of this twelve and a half

feet for the purposes of an alley. . . . With reference to the reservation of this alley, the same representations were made (to other purchasers) exactly as in the case of Mr. Hanniman.''

It is settled that while, generally, a representation to raise an estoppel, where the negotiations have ended in a contract, must relate to an existing fact and not be a mere expression of opinion or a promise of future performance, a well recognized exception to the rule is presented where the statement relates to an intended abandonment of an existing right and is made to influence others, and they have been influenced by it (*Union Mutual Life Ins. Co.* v. *Mowry,* 96 U. S. 544); and so, where purchases are made upon representations by the seller that abutting property owned by him will be maintained either as a public street or private way for the benefit of the purchaser, here is the expression of an intended abandonment of a seller's existing right which will support an estoppel, if the purchaser has relied upon it. (*Prescott* v. *Edwards,* 117 Cal. 303, [59 Am. St. Rep. 186, 49 Pac. 178].)

Besides the facts above set forth, and besides the additional circumstance that during all these years the appellants have used this passage-way as an alley under what they conceived to be their right, there are further matters in evidence which, while not bearing directly upon the question of estoppel, have a significance as tending to show what was in the minds of the parties at the time of the contract. Thus, after the deed, it is in testimony that Mr. Banning congratulated one of the purchasers upon having made an advantageous bargain, since his lot fronted upon the alley. This, of course, is but a statement or representation made after the fact, but it is of value as showing what Mr. Banning's conception of the matter was at the time, which conception he undoubtedly conveyed to his agents. Moreover, the city has treated this *cul de sac* as a public way and has levied no assessments upon it. Mrs. Banning, who testifies to her ignorance of many of these matters, is chargeable with this knowledge, and with the knowledge came the duty, if she regarded it as her private property, to see that it bore its share of the burden of taxation.

Coming to its ultimate analysis, the controversy resolves itself to this: What is the meaning of the language employed

by the agent in dealing with the purchaser? By plaintiffs
it is contended that the language meant no more than what
Mrs. Banning testified was her understanding of the matter;
that she designed to reserve this strip for her own purposes
and for such a length of time as she saw fit, as a mode of
ingress and egress to the property of her daughters in the
rear; that the purchasers of her lots could, and did, use this
property under license during such time as she chose to allow
the alley-way to remain open, but their right to use it was
under a mere license, revocable at the owner's pleasure;
that when Mr. Dobinson said, as above quoted, that the
estate had decided to reserve the west half of the lot in order
to give an entrance to the rear property owned by the minors,
and that, therefore, the purchaser would have the benefit
of the alley, his language meant no more than as above
stated, namely, that Mrs. Banning was reserving for her own
purposes a private way, and so long as she chose to reserve
it the purchasers would have the benefit of it. Upon the
other hand, what is the fair meaning of the language which
the real estate agent testifies that he used, and what is the
idea which would naturally be conveyed by it, It seems
quite plain that it is not the construction for which respondent
contends. If such had been its meaning one would expect
that somewhere in the agent's testimony there would have
been at least a suggestion that he regarded the twelve and
a half feet as a temporary private way of the seller, to be
closed at her pleasure. Yet no intimation of this kind is
anywhere found in his testimony. The natural interpretation
of his language conveys the idea that because Mrs. Banning's
daughters owned property to the rear of this strip, she had
decided to reserve the strip as an alley-way; that the reason
which prompted her to this reservation was the fact that
her daughters owned property in the rear, but that the effect
of the reservation would be to give the purchasers of adjoin-
ing lots a perpetual easement over this open strip. Thus it is
apparent that there is evidence, substantial and strong, to
support the plea of estoppel, and it was, therefore, error for
the court to fail to find upon it. This court is, of course,
without ability to make a finding on the matter, and it
follows, therefore, that the order appealed from must be
reversed and the cause remanded for a new trial.

Angellotti, J., Shaw, J., Lorigan, J., McFarland, J., and Beatty, C. J., concurred.

Rehearing denied.