Jones, J.
 

 Each of these suits grew out of the same transaction. In the Wassman and Finnell cases the pleadings and supporting facts are similar, and they may be disposed of together. In both cases the petitions are alike. After reciting the contract with the board of education, the giving of the bond, the furnishing of labor and material, and the acceptance of the school building by the board on May 8, 1925, the petitions allege that, within 90 days after such acceptance, the plaintiffs, through one Tyler, the clerk of the board of education, furnished the surety a statement of the amount due for labor and material furnished the principal contractor. They also allege that on May 8, 1925, with full knowledge of the amounts due plaintiffs, the surety company, through its agents, stated to the attorneys for the plaintiffs, and to the board of education as well, that the amounts due the plaintiffs would be paid by the surety; that the acts and conduct of the surety on that occasion were such as
 
 *76
 
 to cause the plaintiffs to believe that their claims would be paid; and that by its acts and conduct the surety company waived the furnishing of statements of the amounts due plaintiffs, which they were required to furnish under Section 2365-3, General Code. The surety company filed its answers, specifically denying that such Statements were furnished, and denying also that it made the promises or statements alleged in the petition. In substance, the answers were general denials. During the course of the trial, the defendant surety company filed a motion requiring the plaintiffs to elect between what it claimed to be two inconsistent causes of action, to wit, the furnishing of statements and a waiver on the part of the surety company. In each case also the defendant moved for a directed verdict at the close of the plaintiff’s evidence and also at the close of the entire evidence. These motions were overruled by the trial court.
 

 The issues presented by the pleadings and the evidence in their support were twqfold: (1) Was there a statement furnished by the claimant within 90 days after acceptance of the school building by the board, in compliance with the provisions of Section 2365-3, General Code? and (2) Did the representations and conduct of the surety’s agent amount to a waiver of the requirement to furnish such statement, and were the plaintiffs misled thereby to their prejudice?
 

 The school building was accepted by the board of education on May 8, 1925, while these suits were not brought until April, 1926. Section 2365-3, General Code, in effect at the time, provided that any person performing labor or furnishing material for
 
 *77
 
 the construction, of a building, within “ninety days after the acceptance of such building * * * by the duly authorized board or officer, shall furnish the sureties on said bond, a statement of the amount due to any such person,” etc.
 

 Since by their general verdict the jury found the issues joined in favor of the plaintiffs below, it is necessary to consider the proof offered by the plaintiffs tending to show a compliance with the statutes on their part by way of furnishing a statement, and also the proof relating to the conduct and representations of the surety company, giving rise to what is claimed to be an estoppel on its part. The principal contractor had substantially finished the contract, but, because of financial embarrassment, it had failed to pay the amounts due plaintiffs for labor and material furnished for the construction of the building. One Briggs, a superintendent of the contract division of the surety company, appeared upon the scene some time prior to May 8, 1925, and was anxious to obtain from the board of education an acceptance of the building and an adjustment of the material and labor accounts between the principal contractor and his subcontractors.
 

 One Tyler,' an attorney at law, was clerk of the board of education and liad been clerk thereof for the period of twenty-two years. The board of education met about 2 o’clock in the afternoon of May 8th; but on the same day, and a short time prior to the meeting, Briggs had appeared at the office of the clerk, who at the time had in his possession an itemized amount of the claims filed with him by the plaintiffs. Tyler testified that he and Briggs,
 
 *78
 
 prior to the meeting of the board a few hours later, examined the itemized claims of these plaintiffs, and that he (the clerk) placed on a paper the amount of each claim against the principal contractor, the names of the claimants, and the names of their attorneys representing the claims. This paper he said was handed to Briggs, the agent of the surety company. Tyler also testified that the firm name of Cooper, Belt, Cooper
 
 &
 
 Witten, attorneys, was noted opposite to these two claims. Shortly after noon of that day the board held a meeting and accepted the building. At this meeting there were present the president of the board; Tyler, its clerk; Mr. K. C. Cooper, attorney and member of the board; Mr. Roy and Mr. McG-raw, also board members; Mr. Briggs, the agent of the surety company; and a Mr. Thrapp, representing the principal contractor. This meeting was held in the library of the Cooper law firm.
 

 Mr. Cooper, a member of the board, and attorney for two of these claimants, was a witness for plaintiffs, and was asked as to what was said by Briggs at the school board meeting on May 8th. His answer was:
 

 “A question was asked, either by me or Mr. Tyler, I can’t recall which one, as to what the attitude of the bonding company toward the balance of payment due on these materialmen’s claims, of which Mr. Briggs had a list at that time, and his reply was to the effect, by Mr. Briggs, that these claims would be taken care of by the bonding company, that they had no defense to them, and requested they be made and sent in. * * *
 

 “Q. What further, if anything, was said either
 
 *79
 
 by you, Mr. Tyler or Mr. Briggs as to these claims? A. The question was asked by Mr. Tyler of Mr. Briggs, as to what further was required to be done by the claimants and materialmen and the answer by Mr. Briggs was that ‘nothing further was to be done.’ ”
 

 The testimony of Mr. McGraw and Mr. Tyler, the clerk, was substantially to the same effect, both testifying that Briggs stated at the board meeting that the claims were correct, would be taken care of by the surety company, and that nothing further need be done by the claimants.
 

 The first question presented is whether the claimants furnished the surety with a statement in compliance with the provisions of the statute. We are of the opinion that the proof does not justify a finding that such statements were furnished in compliance therewith.
 

 Section 2365-3, General Code, then in effect, provided that a person performing labor or furnishing material in the construction of a building shall, within 90 days after the acceptance of the building, furnish the surety with a statement of the amount due. Where the building is a school building erected by a board of education, the forwarding of the statement to the clerk of the board is not a compliance with that section, even though the surety has knowledge of its contents. Such statement should be furnished to the surety by the claimant, or by his attorney, or an agent duly authorized to present it to the surety after acceptance of the building. Presenting the claim to the clerk is not a “furnishing” thereof to the surety.
 
 Robinson Mfg. Co.
 
 v.
 
 Bradley,
 
 71 Wash., 611, 129 P., 382.
 

 
 *80
 
 The clerk and the board of education, as well as the surety, were interested in the amount of the unpaid claims against the principal contractor. While the claimants may have forwarded their claims to the clerk of the board, there is no proof tending to show that they had authorized the clerk to represent them in furnishing the statement to the bonding company; there is no proof
 
 tending to
 
 show that they were forwarded to the clerk for the specific purpose of having him present them to the surety. So far as this record. discloses, the filing of the statements with the clerk was for the purpose of presenting them to the board of education, which had a fund on hand to be distributed among the various claimants. A memorandum or statement furnished by a stranger, or by one who might or might not present it to the bonding company, fails to comply with the provisions of the above section. If authority to present the statement to the surety was not given to the clerk by the claimants, the latter would not be prevented from disavowing the clerk’s act. The board had on hand a fund to be distributed among the various claimants, and the forwarding of their claims to the clerk of the board may and no doubt was for the purpose of obtaining their
 
 pro rata
 
 share of such fund, which in fact they did receive later. Furthermore, the surety company might rely on the statute requiring the statement to be furnished “after the acceptance of such building. ’ ’ The paper writing or so-called statement wasbefox*e acceptance. In any event there is an entire failure of proof tending to show that the claimants authorized or even expected the clerk to perform the added duty of presenting their claims to the surety.
 

 
 *81
 
 The second major question presented is whether the promise and representations made by the agent of the surety company at the meeting of the school board on May 8, 1925, waived the provision of the statute requiring claimants to furnish a statement, and whether the agent’s conduct and representations on that occasion estopped the surety from claiming its rights in that respect. Counsel for plaintiff in error put the question in this form: “Is the furnishing of the statement required by General Code, Section 2365-3, waived by an oral promise of an agent of the surety to a school board to pay the materialmen’s claims?”
 

 While Briggs and Thrapp denied the representations claimed to have been made at the school board meeting, three witnesses for the plaintiffs, who were present at the meeting of the school board, testified that Briggs there stated that the claims of the plaintiffs were correct and would be paid after four months from that date, and that after the distribution of the fund then on hand among the various claimants the indemnity company would pay the balance due on all the claims, and that the claimants need do nothing further in respect to their claims. These statements were made at a public meeting of the school board in the presence of its clerk, Mr. Tyler, who had received the claims from the claimants, and in the presence of Mr. Cooper, who was counsel for two of the claimants in these cases. The jury found the issues generally in favor of the plaintiffs; and they may well have found that had Briggs not made these representations, and especially the one that the claimants need do nothing further, as their claims would be paid, the claim
 
 *82
 
 ants might have conformed to the provisions of the Code with respect to furnishing a statement of the amount due; and the jury may also haye found that Briggs’ representations at the meeting were of such a character as to induce the claimants to inaction and thus mislead them to their prejudice. The law of equitable estoppel applying to similar cases may be found in the text of Corpus Juris and Ruling Case Law. 21 Corpus Juris, 1140, Section 142; 10 Ruling Case Law, 697.
 

 Concededly the surety company, at the time of the meeting of the school board on May 8th, had an existing right conferred upon it by Section 2365-3, General Code. That right was to have a statement furnished it by the materialmen within 90 days showing the amount due. The testimony of the plaintiffs’ witnesses tended to prove that this right was not only waived and abandoned by the surety, but that the representations made by its agent induced the claimants to neglect the statutory requirement necessary to hold the surety liable. Where the authorized agent of a surety represents to materialmen who are required to furnish the surety with a statement under Section 2365-3, General Code, that their claims are correct and will be paid, and that claimants need do nothing further in respect to their claims, and the claimants relying upon such representations fail to comply with such statutory requirement, and because of such representations are induced to inaction, and thereby alter their position to their prejudice, the surety is estopped from later asserting its right to a compliance with the statute on the part of the claimants. ...
 

 
 *83
 
 In the case of
 
 Union Mutual Life Ins. Co.
 
 v.
 
 Mowry,
 
 96 U. S., 544, at page 547 (24 L. Ed., 674), Mr. Justice Field, speaking for the court, said: “The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment.” And in
 
 Dickerson
 
 v.
 
 Colgrove,
 
 100 U. S., 578, 580, 25 L. Ed., 618, Mr. Justice Swayne said: “The estoppel here relied upon is known as an equitable estoppel, or estoppel
 
 in pais.
 
 The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.” To the same
 

 effect are
 
 Shields
 
 v.
 
 Smith,
 
 37 Ark., 47, and
 
 Banning
 
 v.
 
 Kreiter,
 
 153 Cal., 33, 94 P., 246. See, also,
 
 Carnegie, Phipps & Co., Limited,
 
 v.
 
 Hulbert
 
 (C. C. A.), 70 F., 210;
 
 American Gas & Ventilating Machine
 
 
 *84
 

 Co.
 
 v.
 
 Wood,
 
 90 Me., 516, 38 A., 548, 43 L. R. A., 449;
 
 Kinney
 
 v.
 
 Farnsworth,
 
 17 Conn., 355.
 

 In the Brown-Graves Company case, here for decision, the facts respecting the feature of estoppel differ only in this respect: The claimant in that case had made out its claim and had sent it by a messenger to Tyler, the clerk. It does not appear that the claimant or his attorney was present at the board meeting when Briggs made his representations. Tyler testified that this claim was presented to Briggs with a notation thereon of the person who represented the claimant. The record does not disclose who that person was, for the reason that the paper was not produced in court, Tyler testifying that he had given it to Briggs. However, the testimony in other respects was similar to that in the Wassman and Finnell cases. If plaintiffs ’ witnesses are to be believed, and evidently the jury did believe them, Briggs’ statements were made at a public meeting, in the presence of an attorney representing some of the claimants, before a school board interested in the claims, and in the presence of Tyler, the clerk, who had obtained the Brown-Graves Company statement and placed it in the possession of the surety’s agent; the representations having been made in respect to all the claims, under these circumstances, they must have been made in contemplation of the fact that they would be communicated to the claimants as a class, and that the claimants, whether present or not, would rely upon them. The persons present at the meeting were not mere strangers casually hearing the declarations of Briggs, but they were parties naturally interested in the claims and in the disposition of the funds
 
 *85
 
 available for their partial payment. Under these circumstances we do not think that the case of
 
 Morgan
 
 v.
 
 Spangler, Sheriff,
 
 14 Ohio St., 102, applies. Briggs knew that Tyler had the claim of the Brown-G-raves Company, and Briggs should reasonably have known that Tyler would communicate Briggs’ declarations to that claimant, which in fact Tyler did.
 

 Mr. Justice Quain of the Queens Bench, in
 
 Swift
 
 v.
 
 Winterbotham,
 
 8 L. R., Q. B., 244, announced the rule of law to be that representations need not be made to the plaintiff directly, but that “it is sufficient if the representation is made to a third person to he communicated to the plaintiff, or to be communicated to a class of persons of whom the plaintiff is one, or even if it is made to the public generally with a view to its being acted on, and the plaintiff as one of the public acts on it and suffers damage thereby. ’ ’ The declarations of Briggs were made to a class of persons, to wit, to claimants who had filed their claims with the board; and it was only natural that, having been made to a class, the members of the board, as well as the claimants present at the meeting, would communicate the declarations of Briggs to the Brown-G-raves Company, whose statement Briggs had obtained, though he denies this.
 

 In
 
 Hodge
 
 v.
 
 Ludlum,
 
 45 Minn., 290, 47 N. W., 805, the first proposition of the syllabus is as follows: ‘ ‘ To entitle a party to claim that another is estopped by his representations, the representations must have been made to him, or they must have been of such a character, and made under such circumstances, that the party making them must be taken
 
 *86
 
 to have contemplated that they would be communicated to and acted on by him.”
 

 Counsel for plaintiff in error argue that, since the section of the Code was written into the bond, and became a part of it, any oral promise of Briggs, modifying the obligation of the bond, would be Invalid; that, in order to give it validity, any new promise should have been in writing, under Section 8621, General Code, which provides that no action shall be brought to charge the defendant upon a promise to answer for the debt of another unless the agreement is in writing. That statute has no application whatever to these cases. The promise of the surety was not a promise to answer for the debt of another; and, again, the right of action of the claimants was not founded upon any new promise, but upon the original obligation contained in the bond. Furthermore, there was no consideration for the new promise of Briggs to pay the amount due the claimants, four months after the meeting of the school board; nor did claimants agree to any extension of time for payment. Were we to concede that the statute of frauds did apply, still, if the representations and conduct of the agent of the surety company were such as to lull the promisee claimant into the belief that no statement need be filed, and led him into a situation beneficial to the declarant and prejudicial to the claimant, the principle of estoppel would apply.
 
 White
 
 v.
 
 Walker,
 
 31 Ill., 422;
 
 Seymour
 
 v.
 
 Oelrichs,
 
 156 Cal., 782, 106 P., 88, 134 Am. St. Rep., 154.
 

 The plaintiffs sought recovery in a single cause of action, basing their right on allegations that a statement was furnished, and upon further allega
 
 *87
 
 tions pleading estoppel on the part of the surety. The case of the Brown-Graves Company differs from the others, in that its petition contained two causes of action; but the second cause of action, by adopting the first, pleaded both performance and estoppel. While in each of the cases the petitions are probably not as broad as the proof relating to estoppel, yet there are sufficient allegations in each of them to place that question in issue. This court has established the principle that, in order to avail himself of proof of a waiver, or estoppel, a plaintiff, having opportunity to do so, must allege in his pleadings facts invoking that equitable relief.
 
 Eureka Fire & Marine Ins. Co.
 
 v.
 
 Baldwin,
 
 62 Ohio St., 368, 57 N. E., 57;
 
 Schurtz, Admr.,
 
 v.
 
 Colvin,
 
 55 Ohio St., 275, 45 N. E., 527;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Howle,
 
 68 Ohio St., 614, 68 N. E., 4;
 
 List & Son Co.
 
 v.
 
 Chase,
 
 80 Ohio St., 42, 88 N. E., 120, 17 Ann. Cas., 61. It frequently happens that a case may assume an aspect where a plaintiff, instead of setting up an estoppel in his petition, pleads it in his reply.
 

 In the trial court the surety company moved that the plaintiffs elect between what it claimed to be inconsistent causes of action contained in their petitions, viz.: (1) the performance of the condition requiring the furnishing of a statement; and (2) the waiver of such performance by the surety company. The question thus raised is analogous to that where a plaintiff is required, as a condition to recover, to furnish proofs of loss in insurance cases. While the
 
 Baldwin case, supra,
 
 does not decide the question of election, it clearly indicates that a plaintiff may plead in the same suit a declaration of per
 
 *88
 
 formance and a waiver of performance by tbe defendant. Giving two reasons or grounds why the plaintiff should recover does not constitute two inconsistent causes of action. But one recovery is sought, although the grounds therefor are stated in different form; and it is possible that the proof adduced might substantiate one or both. Claimants for labor and material, who plead performance by complying with Section 2365-3, General Code, and who allege also that such compliance was waived by the conduct and representations of the surety, do not plead inconsistent causes of action, but plead two distinct grounds, either of which, if proven, would sustain a recovery. It frequently happens that a plaintiff seeking recovery upon a transaction may not know which of two grounds he will be able to prove in order to sustain his cause of action, and often may have grave doubts as to his ability to safely plead and prove the ope or the other. Under our code of liberal procedure, where there is uncertainty as to the exact ground of recovery, a plaintiff, where but one satisfaction is sought, may so frame his petition as to meet the contingencies of the trial. Where he is uncertain which of two grounds he may be able to prove in order to fix liability on the part of a defendant, and is uncertain as to which of the two he can safely plead, he should not be required to elect upon which of the two grounds he will stand.
 
 Velie
 
 v.
 
 Newark City Ins. Co.,
 
 65 How. Prac. (N. Y.), 1; Bliss on Code Pleading (3d Ed.), Section 120;
 
 Wilson
 
 v.
 
 Smith,
 
 61 Cal., 209;
 
 Whitney
 
 v.
 
 C. & N. Ry. Co.,
 
 27 Wis., 327;
 
 Jones
 
 v.
 
 Palmer,
 
 1 Abb. Prac., 442.
 

 This court, in
 
 Citizens’ Bank
 
 v.
 
 Closson,
 
 29 Ohio
 
 *89
 
 St., 78, applied the same rule where a plaintiff sought to require a defendant to elect upon which of two grounds he would rely as a defense. In that case the defendant denied signing a note, and alleged that, if he did sign it, his signature was obtained by fraud and without consideration. Welch, C. J., in discussing the question of election, said, at page 81: “It certainly is not consistent with the spirit and intention of the code that a party having one or the other of two good defenses, without the means of knowing, otherwise than from the developments to be made upon the trial, which of the two, in fact or in law, is his true defense, shall, at his peril, be compelled to elect in advance on which he will rely, to the exclusion of the other.” See, also,
 
 Pavey
 
 v.
 
 Pavey,
 
 30 Ohio St., 600. We frequently find the same situation applied to a defendant in actions sounding in tort, where, in the same pleading, although denying negligence, he pleads contributory negligence. The trial court did not err in refusing the motion of the defendant requiring the plaintiffs to elect because of the claimed inconsistencies in pleading both performance and estoppel in the same cause of action.
 

 There is but one other question that needs consideration, and that arises only in the Wassman case. Availing itself of the provisions of Section 11463, General Code, the defendant requested the court to instruct the jury, if they returned a general verdict, to find specially upon the following particular questions of fact:
 

 “1. Did H. T. Tyler give Mr. Briggs, on May 8, 1925, before the acceptance of the building by the school board, a paper writing?”
 

 
 *90
 

 “2.
 
 If your answer to question No. 1 is ‘Yes’ then state what the paper writing contained.”
 

 “3. If your answer to question No. 1 is ‘Yes’ then is your verdict based upon that finding?”
 

 The first question was submitted by the court and answered affirmatively by the jury. The others were refused. These findings related to the issue of performance only, and did not touch the issue of estoppel. The verdict was a general one in favor of the plaintiff upon both issues, either of which, if proven, would sustain recovery. Had the jury answered the interrogatories the surety company desired still such answers would not control, nor would they be inconsistent with the general verdict; and it is only when the special findings are repugnant to the general verdict that the former control the latter; and the conflict, if any there be, must be clear and irreconcilable.
 
 Davis
 
 v.
 
 Turner,
 
 69 Ohio St., 101, 68 N. E., 819;
 
 Central Gas Co.
 
 v.
 
 Hope Oil Co.,
 
 113 Ohio St., 354, 149 N. E., 386. The jury may have truthfully answered that they based their verdict on performance; but they could just as truthfully have answered that they also based it on estoppel; and the purport of the general verdict is a finding upon both of those issues in favor of the plaintiffs. Had the interrogatories been so framed as to elicit findings that the verdict was based
 
 solely
 
 on the issue of performance, they should have been submitted to the jury; and, if'the special findings would elicit the fact that the verdict was based
 
 solely
 
 on an issue which lacked proof to sustain it, it would have been the duty of the trial court to submit them, as such a finding would necessarily have controlled the general ver
 
 *91
 
 diet. Criticisms were also directed against the charges of the court, but we find no prejudicial error committed by the trial court in that respect.
 

 The judgments are affirmed.
 

 Judgments affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Matthias, Day and Allen, JJ., concur.