[L. A. No. 21915.   In Bank.   Apr. 14, 1953.]

FRANCIS EDMONDS et al., Respondents, v. COUNTY OF LOS ANGELES et al., Appellants.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Appellants.

Richard Richards for Respondents.

SPENCE, J.—Plaintiffs sought a declaration of their claimed right under a zoning ordinance to maintain a trailer court as a nonconforming use of their residentially zoned property. The trial court held that they were entitled to

continue with their operation of a trailer court to the extent of 20 trailers, and from the portion of the judgment so declaring, defendants appeal. It is defendants' contention that plaintiffs' right to make any use of their property for trailer court purposes no longer exists as the result of the parties' agreement limiting such use to a three-year period, which has long since expired. The record sustains defendants' position.

Prior to November 9, 1945, plaintiffs maintained a trailer court for 20 trailers on their property, consisting of five lots in an area zoned as C-3, wherein trailer courts were permitted. They first started their trailer court operations on two lots and then expanded their business to include three more lots, all conducted as a single unit in accommodating 20 trailers under permits from the state and licenses from the county. On the mentioned date the property was rezoned to R-4, restricting it to residential use only. The rezoning had no retroactive effect upon plaintiffs' business or property, and they were expressly entitled thereunder to 20 years within which to liquidate their "particular existing use"— a 20-trailer court operating on five lots.

Plaintiffs' business increased during the postwar period, and by mid-July, 1946, they had 48 trailers on their five lots, despite the fact that they had permits and sanitary facilities for only 20. In short, as of that time, plaintiffs were maintaining their trailer court in flagrant disregard of both local and state laws: violating the local zoning ordinance in exceeding the permitted nonconforming use of their property; and violating the state law in operating with more than twice the number of trailer spaces permitted by their existing state permits and without the required increased sanitary facilities. Plaintiffs then undertook to legalize their illegal operation, and they applied to the Division of Housing of the State Department of Industrial Relations for a permit for 30 additional trailers. They were informed that they would have to secure a clearance from the local zoning authorities. They then went to the regional planning commission with a "Petition for Zone Exception," seeking an outright exception for a trailer camp without mention of any limitation as to number of authorized trailer spaces, and applying for permission to install certain plumbing fixtures. In their petition it is stated: "This property has been continuously used as a trailer camp for over four years. It now becomes necessary to construct certain sanitary facilities

to comply with the state law for housing and this zoning exception is sought for the purpose of bringing an existing, non-conforming installation within the scope of the regulation governing the same.''

The previously obtained state permits, one in 1941 and one in 1942, authorized respectively the operation of ''ten camp spaces'' and ''ten additional camp spaces.'' These permits made particular reference to the sanitary facilities required by state law (Health & Saf. Code, § 18460 et seq.), but actual building permits were required from the local authorities. However, what plaintiffs were seeking in their 1946 applications to the authorities was not a mere incidental permit to construct additional sanitary facilities, but rather a permit from the state to maintain a larger trailer court and an exception from the local planning commission to permit them to operate with more trailer spaces than were involved in the permitted preexisting use under the zoning ordinance.

In response to plaintiffs' petition, the regional planning commission recommended a one-year exception, provided that plaintiffs would abandon the entire nonconforming use at the end of that time. Plaintiffs were dissatisfied and took an appeal to the board of supervisors. The latter, after a controversial hearing on October 15, 1946, granted plaintiffs an exception on condition that they abandon the entire nonconforming use of their property for trailer court purposes at the end of three years. The trial court found that plaintiffs did not accept this condition but the undisputed facts show that this finding is not supported by the evidence.

The conditional exception was granted at a public meeting of the board. Plaintiff Francis Edmonds was present in person and by his counsel. When the matter was first considered, the inclination of the board was to grant the exception subject to the one-year limitation as recommended by the planning commission. Plaintiffs' counsel then suggested a three-year conditional exception and urged Edmonds to accept it if the board would indicate a willingness to agree thereto. But Edmonds refused, claiming that a five-year exception was necessary in order to permit time for the completion of his planned construction of multiple residential units on the property in conformity with existing zoning regulations. However, at one place in his argument Edmonds said: ''I would be willing to take whatever conditions are necessary.'' After considerable discussion of the debated

point, the board offered the exception subject to a three-year limitation. It was emphasized that at the end of that time the entire nonconforming use would have to be abandoned. Edmonds again refused. Thereupon it was explained to him that if he persisted in his refusal, he would be granted no exception and would be limited to 20 trailers. He was urged to "reconsider" as a "last chance" and he replied: "I would reconsider on my attorney's advice." Apparently some of the members of the audience attending the meeting had not understood the whole proceeding, and the situation was summarized by one of the board members as follows: "Mr. Edmonds has said on advice of his attorney he would reconsider and comply with the provisions as we have made them. Is that right, Mr. Edmonds?" The latter's reply was: "That is right." Another member of the board further clarified the situation by immediately restating the main condition of the exception in these words: "That all that property be cleared of trailers three years from today." Thereupon a vote was taken on the motion to grant the conditional exception; and in the presence of Edmonds and his counsel, it was passed by the board three to one. A partial transcript of the hearing was introduced in evidence as an exhibit and is quoted below.*

---

*Synopsis No. 107                October 15, 1946.

EXCERPT FROM LONG PUBLIC HEARING IN ZONING CASE NO. 1678

There were present Supervisors Leonard J. Roach, John Anson Ford, Raymond V. Darby and Roger W. Jessup.

Supervisor Roach was Chairman pro tem. in the absence of Chairman Wm. A. Smith

. . . after about an hour of hearing. . . .

MR. JOHN L. RICHERSON (RPC spokesman): He can stay under the present circumstances for a period of 20 years, that is correct. However, the Regional Planning Commission in their recommendation stated that if the exception were granted that Mr. Edmonds agree in writing to eliminate the existing nonconforming trailer court at the end of one year.

MR. HAL SLANE (Plaintiffs' counsel): He would be giving up a 20-year right to maintain a trailer park on two lots for a temporary extension and I think it should be a minimum of three years on the other three lots. I feel sure that at the end of the three years his building situation will be such that he can reasonably expect to complete his multiple dwelling units. He intends to start building those as soon as he can, but you know how difficult it is to get started, and as fast as they are built he will remove the trailers as he goes down the line. I know that my clients will not agree to forfeit their 20-year right unless they are given an adequate time in order to complete the whole project.

MR. JESSUP: Mr. Chairman, I know that you suggested two years from January first, which makes 26 months, but I feel there would be a better feeling here with the operator of the trailer court if it were made

Formal notification of the board's action was transmitted to plaintiffs by letter from the regional planning commission. In so noting approval of plaintiffs' application for a zone exception and the main condition that plaintiffs cease the use of their property as a trailer court after three years, the commission referred to the board's further proviso that a faithful performance bond be filed and that an agreement to comply be executed. Plaintiffs failed to fulfill these latter two conditions, and apparently because of such failure the trial court found that the exception was never accepted.

three years, and so I make a motion that an extension of three years time be granted to the applicant.

MR. DARBY: One of the provisions which is also required by the Regional Planning Commission is that Mr. Edmonds properly landscape and keep the property up and those of you who are interested, help him do it.

MR. FORD: Mr. Chairman, I would like to say at this time I think three years is really too much, but if the Chairman is willing to go along on three years I will defer to his judgment because he knows the situation better than I do, but in the light of the record and the manner in which this operator has proceeded, I don't like this type of evasion of the law and an attempt like a camel to get his head in the tent and then think he can get it legalized after he gets the whole camel in, and I think that there should be added to this a bond that this operator will do certain things within a certain period of time, namely that he should put acceptable shrubbery that will meet the approval of the Planning Commission; that he shall install the necessary toilets and any other conditions that the Regional Planning Commission might suggest and I think that is not an unreasonable request in the light of his own record and at the proper time I will make that as an amendment to the motion. A bond of what amount would be a reasonable bond?

ACTING CHAIRMAN ROACH: $2000.00 would cover it.

MR. JESSUP: I will include that in my motion.

ACTING CHAIRMAN ROACH: The motion is to extend for three years——

MR. SLANE: Mr. Edmonds would like to make a brief statement if you will permit him to do it.

ACTING CHAIRMAN ROACH: The motion is that the extension be granted for three years period providing you deposit a bond of $2000 to guarantee faithful performance of the provisions as outlined by the Regional Planning Commission.

MR. SLANE: That would be the landscaping plus the additional toilet facilities as required by the State law.

MR. W. K. JUDD: The State law provides for the additional toilets.

MR. SLANE: They are already on their toes.

MR. JESSUP: My motion would include the shrubbery which is not a part of the State law.

MR. SLANE: One point of information and I think this will clarify it— that would be with the understanding that he would abandon the entire project at the end of three years?

MR. DARBY: That is right.

MR. SLANE: In other words, by that time he would have either completed his multiple dwelling units or else move all the rest of the trailers?

MR. DARBY: That is right.

Shortly after the granting of the conditional exception by the local authorities, plaintiffs again applied to the division of housing for a permit to increase their trailer court by 30 spaces. Their application was granted but only after checking plaintiffs' clearance with the planning commission. Plaintiffs also applied to the department of building and safety for a permit to construct the necessary sanitary facilities, and approval of that application likewise followed the department's ascertainment that the conditional exception had been granted. Plaintiffs do not dispute the uncontradicted evidence showing that neither of these permits would have been issued in the absence of the granting of the above mentioned conditional exception.

---

MR. SLANE: I want to be sure so he would understand, because he has one thing he wants to say.

MR. EDMONDS: I don't feel that would be sufficient time for me and I would be unable to agree to it. I would be willing to take whatever conditions are necessary. I feel that five years would be the very minimum that I would consider in order to abolish the entire camp.

MR. ROACH: Then what do you want to do?

MR. JESSUP: We make it three years and if he isn't off at the end of the three years, then of course the County will take what steps are legally necessary.

MR. DARBY: I think you are making a mistake, Mr. Edmonds. You are making a mistake to make such a statement. I am in favor of voting for the motion.

MR. S. D. PONTI: May I say something? I think the man made application for an extension of time and now he withdraws and how can you grant it?

MR. JESSUP: He is going to get three years and that is all and if he isn't off in three years——

MR. PONTI: He doesn't want three years.

MR. DARBY: If he can't comply, that is up to him.

MR. PONTI: You are going to give the three years whether he wants it or not?

MR. RICHERSON: Mr. Chairman, I might clarify the fact that if Mr. Edmonds does not agree to abandon this use on the two southerly lots, he cannot be forced off of there until 20 years. If he agrees to the exception under those terms, then he can.

MR. DARBY: He can be forced off the north three immediately.

MR. JESSUP: We are going to drive a bargain with you right now. You are going to agree to this three years or I am going to change my motion.

MR. EDMONDS: No.

MR. JESSUP: I am going to change my motion right now.

MR. FORD: And make it one year?

MR. DARBY: Make it nothing, out right now.

MR. JESSUP: Or nothing and out completely.

MR. EDMONDS: That is a considerable investment and I would rather take the consequences.

MR. FORD: What is your income? You get $12 a month on how many trailers?

MR. EDMONDS: There are 49 trailers, 48 of which are paying.

MR. JESSUP: You have the right on two lots?

Plaintiffs contend that they never accepted the conditional exception offered by the board, but a reading of the quoted transcript of the hearing negatives the force of their position. The only construction which can reasonably be placed upon Edmonds' action at those proceedings is that he finally expressed a willingness to follow the advice of his counsel and that he orally accepted the three-year conditional exception so as to obtain the board's favorable action on his application. Any possible ambiguity in any single statement becomes entirely clear by reading such statement in context. Edmonds' failure to execute a written agreement or to file a faithful performance bond could not alter

---

MR. EDMONDS: That is right.

MR. JESSUP: How many trailers on the two lots?

MR. EDMONDS: Approximately 30.

A WOMAN SPEAKER: The original permit was for 20 trailers.

MR. JESSUP: I make a motion that Mr. Edmonds' request be denied.

ACTING CHAIRMAN ROACH: The motion is to sustain the Planning Commission?

MR. JESSUP: Yes.

ACTING CHAIRMAN ROACH: If no objection, so ordered.

MR. FORD: Are you sure you don't want to consider that proposition on the three years?

MR. DARBY: This is your last chance.

ACTING CHAIRMAN ROACH: It is all over.

MR. EDMONDS: I would reconsider on my attorney's advice.

MR. DARBY: I move that we reconsider.

MR. JESSUP: Then my original motion.

MR. DARBY: Now vote on my motion to reconsider.

ACTING CHAIRMAN ROACH: If no objection, so ordered.

MR. JESSUP: Now I will renew my original motion.

ACTING CHAIRMAN ROACH: Roll Call.

MR. FORD: Is it clear to the citizens who are here?

(calls of "no" from the floor)

MR. FORD: Mr. Edmonds has said on advice of his attorney he would reconsider and comply with the provisions as we have made them. Is that right, Mr. Edmonds?

MR. EDMONDS: That is right.

MR. JESSUP: That all that property be cleared of trailers three years from today.

MR. DARBY: From the first of November?

MR. JESSUP: Yes.

MR. ROACH: That involves the two lots that you already have.

MR. JESSUP: That is right.

MR. ROACH: The two lots in addition?

MR. JESSUP: All the lots, everything is to be cleared off. This is final.

MR. DARBY: This is it.

MR. JESSUP: Now I am asking a vote on my motion.

ROLL CALL

MR. FORD: Aye.

MR. DARBY: Aye.

MR. JESSUP: Aye.

ACTING CHAIRMAN ROACH: No.

The motion carried.

the binding effect of Edmonds' verbal acceptance of the conditional exception in the proceedings before the board. (See *Thompson* v. *Schurman,* 65 Cal.App.2d 432, 440 [150 P.2d 509].)

█ Nor is there merit to plaintiffs' further contention that throughout they have acted in conformity with their belief that they are unlimited as to the number of trailers which they may maintain in their trailer court. At no time prior to the commencement of this action were any agents of defendants informed of any such claim by plaintiffs. Never once during the entire proceedings culminating in the granting of the conditional exception did plaintiffs assert a claim to a nonconforming use unrestricted as to the number of trailers. On the contrary, it undeniably appears that plaintiffs throughout have acted in entire conformity with the conditional exception. They accepted all benefits bestowed on them, securing their state and local permits on the basis of the exception. Had they believed that they were entitled to maintain more than 20 trailers on their property under the existing nonconforming use, they would have so claimed, and in the face of administrative opposition, they would have relied on the courts for vindication. Instead they proceeded as if they claimed no right, in the absence of the granting of the exception, to have more than 20 trailers on their property. In these circumstances plaintiffs should not now be allowed to challenge the effectiveness of the three-year conditional exception under which they have obtained definite advantages to which they were not otherwise entitled.

It may be conceded that if plaintiffs' right to the nonconforming use were unlimited in the number of trailers which might be placed on the property, it would continue for the 20-year period created by the zoning ordinance regardless of the conditions attached to the exception. The exception would then have been unnecessary. In this connection, it should be noted that plaintiffs have not appealed from the judgment in this case which limits their trailer court to 20 trailers. However, they have appealed from the judgment in the companion case, *Edmonds* v. *Board of Supervisors,* L. A. No. 21807, *post,* p. 903 [255 P.2d 781], which raises the issue of the number of trailers which may be placed on the property under the nonconforming use. In order to harmonize the result of the two cases which concern similar issues, the question of the number of trailers permitted by the nonconforming use will therefore be considered here.

The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected. (Yokley, Zoning Law and Practice, § 132, p. 255.) ■ Accordingly, a provision which exempts existing nonconforming uses is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. (*County of San Diego v. McClurken,* 37 Cal.2d 683, 686 [234 P.2d 972].) ■ However, the continued nonconforming use must be similar to the use existing at the time the zoning ordinance became effective (see *Rehfeld* v. *City and County of San Francisco,* 218 Cal. 83 [21 P.2d 419]; *City of Yuba City* v. *Cherniavsky,* 117 Cal.App. 568 [4 P.2d 299]), and in determining whether the nonconforming use was the same before and after the passage of a zoning ordinance, each case must stand on its own facts. (Yokley, Zoning Law and Practice, § 135, p. 261.)

■ The enlargement of plaintiffs' trailer court to accommodate 30 more trailers is clearly a different use of their property from that contemplated by the ordinance's allowance of the continuance of the *"particular* existing use" for a prescribed period, especially in view of the fact that plaintiffs were required to make significant increase in the size of their so-called "utility house" in order to provide the additional sanitary facilities required by the Health and Safety Code. (§ 18460 et seq.) The spirit underlying the ordinance is to restrict rather than to increase the nonconforming use; and if trailers could be added to plaintiffs' trailer park as they saw fit during the 20-year period of the automatic exception granted by the ordinance, it would be akin to legalizing the addition of new buildings in connection with the nonconforming use in defeat of the zoning purpose. (*Cf. Wilbur* v. *City of Newton,* 302 Mass. 38 [18 N.E.2d 365, 368].) There is no significance to plaintiffs' argument that it does not appear that the public welfare would be endangered by the added number of trailers on plaintiffs' property. As was said in *Rehfeld* v. *City and County of San Francisco, supra,* 218 Cal. 83, at page 85: ". . . the whole value of zoning lies in the establishment of more or less permanent districts, well planned and arranged . . . [and if] . . . the courts are to reexamine each instance of inclusion or exclusion of property from a district, solely with regard to the dangerous or nondangerous character of the particular structure, and irrespective of the gen-

eral scheme of the ordinance, then there is, of course, no possibility of ever achieving successful zoning.''

The purpose of zoning in effecting the crystallization of present conditions and the constructive control of future development was recognized in the case of *City of Yuba City* v. *Cherniavsky, supra,* 117 Cal.App. 568, where it was stated at page 573: ''If there is no limitation upon the character or location of a nonconforming business, so long as it is located on the same lot where it formerly existed, then one may abandon an inexpensive notions counter which was maintained prior to the adoption of a zoning ordinance, and construct in lieu thereof an elaborate mercantile establishment at the opposite end of the same lot, at an unlimited expense, and thus circumvent and destroy the very purpose of the ordinance.''

There is little difference in principle between enlarging a grocery business through relocation on a different part of the same property, as was the situation in the cited Yuba City case, and enlarging a trailer court business through the addition of trailer units for the housing of more people. In either situation the enlargement of the nonconforming business would involve a detrimental effect on surrounding property values in a residential area, as well as conflict with the purpose of zoning to restrict rather than extend the ''existing'' nonconforming use. In *Pisicchio* v. *Board of Appeals of Village of Freeport,* 165 Misc. 156 [300 N.Y.S. 368], it was appropriately said at pages 369-370: ''Unless owners of nonconforming uses in zoning areas are required to adhere to the excepted use in volume of trade as well as character of business, zoning laws will be rendered ineffectual and such favored parcels of property will assume great values based not upon a natural growth, but upon the right of the owner to extend and enlarge the existing nonconforming use.''

The cases cited by plaintiffs permitting an extension of a nonconforming use under specified standards in the applicable zoning regulation (*People ex rel. Wohl* v. *Leo,* 109 Misc. 448 [178 N.Y.S. 851]; *Cochran* v. *Roemer,* 287 Mass. 500 [192 N.E. 58]) or involving the review of a board's exercise of discretion in granting a proposed variance (*Syrian Orthodox Charitable Soc.* v. *Zoning Board of Review,* 53 R. I. 232 [165 A. 778]; *Amero* v. *Board of Appeal of City of Gloucester,* 283 Mass. 45 [186 N.E. 61]; *cf. DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156 [32 A.2d 635, 147 A.L.R. 161]) are distinguishable and do not affect the problem here

presented involving as it does plaintiffs' "right to enlarge" their trailer court business beyond its established limits at the effective date of the zoning ordinance. (*Rehfeld* v. *City and County of .San Francisco, supra,* 218 Cal. 83, 84.)

In addition to prohibiting the increase in the number of trailers on the property, the zoning ordinance prohibited any increase in the size of the buildings on the property, for it is well settled that a nonconforming use does not entitle the owner of the property to increase the size of his permanent buildings. (*Rehfeld* v. *City and County of San Francisco, supra,* 218 Cal. 83, 85; *City of Yuba City* v. *Cherniavsky, supra,* 117 Cal.App. 568, 572-573.) In order to accommodate 30 additional trailers plaintiffs had, however, to construct additional sanitary facilities. This they could do only by enlarging the existing utility house, and it was necessary to secure a building permit to do so. Thus, in addition to the benefits secured them by being allowed to have 30 additional trailers on the property for three years, they were permitted to increase an existing structure which they could legally do only after having been granted the exception.

Having taken the benefits of the exception, plaintiffs may not now attack their manner of acceptance. (Civ. Code, § 3521.) That they made an oral acceptance cannot be questioned in the light of the undisputed evidence, and everyone present at the board meeting so understood. The fact that a written acceptance was never made cannot now be successfully advanced. For a period of three years plaintiffs made a use of their property to which they were not entitled under the law in the absence of the granting of the conditional exception. By their conduct they led everyone to believe that the exception had been accepted. Plaintiffs made an oral promise on which defendants relied to their detriment, and justice can be done only by the enforcement of the promise. The situation presented is therefore the ordinary one of promissory estoppel. (Restatement of Contracts § 90; *Banning* v. *Kreiter,* 153 Cal. 33, 36 [94 P. 246]; *Fried* v. *Fisher,* 328 Pa. 497 [196 A. 39, 41-42, 115 A.L.R. 147].)

The portion of the judgment appealed from is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

EDMONDS, J.—The record in this case shows substantial evidence from which the inference reasonably may be drawn that the action of the board of supervisors amounted only to an

offer of a limited term zone variance providing the petitioners agreed in writing to certain conditions which were imposed upon them, and filed a faithful performance bond. They complied with neither condition and the trial court found that the variance had not been accepted. Under these circumstances, an appellate court should not substitute its conclusion as to the effect of the evidence for that of the trier of fact. This is particularly true here because in the companion case (*Edmonds* v. *Board of Supervisors, post,* p. 903 [255 P.2d 781]), the parties agreed in a statement of facts that the exception granted by the board of supervisors in 1946 ''was not accepted by the plaintiff in writing, as its terms required.''

The sole authority relied upon for the holding that ''Edmonds' failure to execute a written agreement or to file a . . . bond could not alter the binding effect of Edmonds' verbal acceptance of the conditional exception in the proceedings before the board'' is *Thompson* v. *Schurman,* 65 Cal.App.2d 432, 440 [150 P.2d 509]. But in that case the court said: ''The question as to whether an oral agreement, including all the essential terms and conditions thereof, which according to the mutual understanding of the parties is to be subsequently reduced to writing, shall take effect forthwith as a completed contract *depends on the intention of the parties,* to be determined by the surrounding facts and circumstances of a particular case. (Citations.) In the present case there is substantial evidence to support the determination of the trial judge that the terms and conditions of the oral contract agreed upon by the parties . . . 'were definite and certain; there was a complete meeting of the minds.' '' (P. 440.) The judgment allowing Francis Edmonds and his wife to continue to maintain 20 trailers as a nonconforming use is based upon a finding that there was no acceptance of the exception as proposed in the meeting of the board of supervisors.

Unquestionably, in reaching his conclusion the trial judge took into consideration all of ''the surrounding facts and circumstances'' in order to ascertain ''the intention of the parties.'' For this court to say that ''the undisputed facts show that this finding is not supported by the evidence'' is to weigh the evidence presented to the trial judge and draw from it different inferences. Moreover, the Thompson case presented only the question as to the effect of an oral agreement which, contrary to the promise to do so, was not reduced to writing. Here, specific conditions were imposed upon the petitioners as a condition for granting the permit.

The first motion made by Supervisor Jessup was "that an extension of three years be granted to the applicant." Supervisor Ford then stated "that there should be added to this a bond that this operator will do certain things within a certain period of time, namely, that he should put acceptable shrubbery that will meet the approval of the Planning Commission; that he shall install the necessary toilets and any other conditions that the Regional Planning Commission might suggest. . . . " Mr. Ford concluded by asking, "what amount would be a reasonable bond?" Acting Chairman Roach suggested $2.000. Supervisor Jessup said: "I will include that in my motion."

The proposed action was summarized by the chairman as follows: "The motion is that the extension be granted for three years providing you deposit a bond of $2,000 to guarantee faithful performance of the provisions as outlined by the Regional Planning Commission." After considerable discussion, Supervisor Jessup said: "Now I will renew my original motion" and it carried by a vote of three to one.

A reasonable conclusion as to the intention of the parties which may be drawn from this record is that the variance was not to take effect until the petitioners complied with the conditions laid down by the board. Unquestionably, the planning commission so construed the motion for in a letter written to Francis Edmonds shortly after the meeting of the board, he was advised that, to obtain the exception he must "agree in writing" that after a period of three years "the use of the entire property including the present non-conforming trailer court shall be abandoned and the use of the property shall revert to the use permitted in the zone existing at that time." A further requirement mentioned by the commission was that "the petitioner furnish a bond in the amount of $2,000 to insure the faithful performance of all the above conditions." The letter closed with:

"Your exception will not be effective until such time as the Regional Planning Commission has received a letter from you agreeing to all of the conditions mentioned above, accompanied by your bond in the amount of $2,000."

Because the petitioners continued the same use of their property as they had made of it before the hearing of their application by the board of supervisors, the majority opinion concludes that they "led everyone to believe that the exception had been accepted." But the failure to comply with

the specific conditions required by the board and the commission is a matter of record with those agencies. In effect, the motion of the board, and the confirming letter of the commission, constituted an offer to grant an exception which was not accepted. By its terms, the exception was ineffective if its conditions were not met.

I would, therefore, affirm the portions of the judgment from which the appeal is taken.

Carter, J., and Schauer, J., concurred.

Respondents' petition for a rehearing was denied May 14, 1953. Edmonds, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.